IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| STATE OF UTAH, et al., | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | No. 23-1102 (and |
| | ) | consolidated cases) |
| UNITED STATES ENVIRONMENTAL | ) | |
| PROTECTION AGENCY, et al., | ) | |
| | ) | |
| Respondents | ) | |
| | ) | |

**RESPONDENTS' REPLY IN SUPPORT OF MOTION TO EXPEDITE CONSIDERATION**

On May 15, 2023, Respondents EPA and Michael S. Regan, Administrator (collectively, "EPA"), moved this Court to confirm its exclusive venue over these consolidated petitions for review and for expedited consideration. ECF 1999261 ("Motion"). On May 30, 2023, the Court deferred immediate consideration of EPA's venue motion, and ordered Petitioners to respond to EPA's expedition request. ECF 2001226. Petitioners' response, ECF 2003050, does not call into doubt the unusual public interest in a speedy resolution of these cases. Instead, Petitioners rehash their own faulty venue arguments and the reasons why they believe this Court should not consider their petitions at all. That is, they assume the conclusion by wrongly presupposing that this Court will grant their abeyance motion. As EPA's Motion explained, this Court has exclusive venue in these

challenges. But more importantly for present purposes: even assuming venue remains in doubt, the risk of harm to the public from delaying adjudication of that issue and the merits is both significant and unusual. Accordingly, EPA's request for expedited consideration should be granted, if not also EPA's motion for the Court to confirm venue.

To begin, Petitioners' opposition to expedition improperly relies on their conclusory assertion that their challenges to the Final Rule should be adjudicated in the regional circuits, rather than routed to this Court under the Clean Air Act's venue provision. *See* 42 U.S.C. § 7607(b)(1); *see also* Mot. 10-16. Throughout their response, Petitioners claim that EPA and the public do not need expedited resolution of these D.C. Circuit petitions, or indeed any resolution at all, because Petitioners wish to see their challenges adjudicated elsewhere.[1] *See, e.g.*, Pet. Opp. 9-10 (suggesting that pending litigation in other circuits "is a reason for this Court" to deny expedition and rehashing comity arguments that are inapplicable because the Clean Air Act has a mandatory venue provision, *see* Resp. to Mot. to Abate Appeal, ECF 2000888 at 4-5). But Petitioners' ability to proceed with their

---

[1] As in their abeyance motion, Petitioners rely on their designation of these petitions as "protective." *See* Pet. Opp. at 1, 12. But this Court's recent order denying abeyance in *Electric Energy, Inc. v. EPA*, No. 23-1035, affirms that petitioners are not categorically entitled to abeyance of petitions they have deemed protective. *See* ECF 2002545 (order); ECF 1989214 (abeyance motion).

2

challenges in the regional circuits is in dispute – not just in this Circuit but in six of its sister circuits.

Neither the Ninth nor Tenth Circuits, where Petitioners have filed their additional petitions, has concluded that it has venue. *Cf.* Pet. Opp. 9-10. The Fourth, Sixth, and Eleventh Circuits – the last of which raised the matter of its "jurisdiction" *sua sponte* – also have yet to rule on the proper venue for these challenges. *See West Virginia v. EPA*, No. 23-1418 (4th Cir.); *Kentucky v. EPA*, No. 23-3216 et al. (6th Cir.); *Alabama v. EPA*, No. 23-11173 et al. (11th Cir.). While a divided motions panel of the Fifth Circuit has ruled in favor of retaining venue, that unpublished order was clear that it did not bind the merits panel. *Texas v. EPA*, 5th Cir. No. 23-60069, ECF 269-1 at 6-13, 24 (May 1, 2023). Likewise, the Eighth Circuit motion panel's denial, without opinion, of EPA's motion to dismiss or transfer petitions, *see Arkansas v. EPA*, 8th Cir. No. 23-1320, ECF 5269098 (April 25, 2023) (denying transfer), ECF 5280996 (May 25, 2023) (denying reconsideration), does not preclude reconsideration by a merits panel – as petitioners there recognized. *See* ECF 5279050 at 6 (May 19, 2023); *Nyffeler Constr., Inc. v. Sec'y of Lab.*, 760 F.3d 837, 842 (8th Cir. 2014) (holding that a merits panel is not bound by the law-of-the-case doctrine where an earlier administrative panel did not explain its decision).

Concordantly, Petitioners are incorrect that "numerous Court of Appeals decisions affirm[] venue is proper in the regional circuits." Pet. Opp. 7. Their citation for that proposition – a *supra* to pages 4-5 of their Opposition – refers only to these preliminary proceedings in the regional circuits, which, as explained above, have made *no* final decisions on the venue question, much less "numerous" affirmations that venue is proper outside the D.C. Circuit. Given the decidedly *unsettled* nature of the venue question here, Petitioners cannot reasonably assert that the "procedural posture of these and related cases" should prevent expedited (or any) adjudication of these petitions.

Petitioners are likewise incorrect that the presence of "antecedent issues" renders expedition "inappropriate." Pet. Opp. 2. It is unclear what issues Petitioners could be referring to beyond their request for abeyance, but their abeyance motion cannot preclude expedition for the same reason: it presumes that venue is inappropriate in this Circuit, which is a question that remains unsettled. Moreover, Petitioner State of Nevada was not party to that abeyance request, so even an order granting that request would not foreclose expedition of the remaining litigation.

In a notable admission, Petitioners suggest that they would favor "expeditious resolution" of these petitions, so long as that resolution occurs in "the other courts where briefing is already underway." Pet. Opp. 8-9. They plainly do

4

not actually oppose expedition of judicial review, only this Court's consideration of these petitions in the first place. As such, their opposition to expedition here lacks credibility.

In any case, Petitioners cannot reasonably deny that granting expedition would serve strongly compelling interests. As EPA's Motion explained, expedition in this Court is necessary to mitigate the risk of divergent opinions in the regional circuits, which will in turn protect significant and unusual state and public interests in the equitable and consistent application of the Good Neighbor Provision at a national scale. Mot. 17-24. Divergent opinions on the nature of upwind states' obligation to protect downwind states under that Provision – depending only on the judicial circuit in which that upwind state is located – would lead to differential treatment of both upwind and downwind states, in direct contravention of the Provision's goal of ensuring equitable air quality burdens between states. *Id.* at 18-22. Divergent opinions on the legal and technical standards governing the application of the Good Neighbor Provision would also present substantial impediments to EPA's administration of this Provision. Assessing upwind contributions to downwind air quality problems requires a comprehensive understanding of how pollution is moving across country and of the complex meteorological, topographical, and anthropogenic influences on that pollution's transformation into downwind ozone. *Id.* at 17-18. Performing that

analysis differently in each circuit would be an enormous burden on the Agency, one Congress could not have intended. These administrative burdens and inter-state inequities would, in turn, affect downwind communities suffering from increased mortality, poor health, environmental effects, and increased regulatory burdens from elevated concentrations of ozone – concerns that are, without a doubt, strongly compelling.[2]  *See Wisconsin v. EPA*, 938 F.3d at 313-20.

Petitioners' filing strategy has created the risk of such divergent opinions, and no single Court is in a position to undo the chaos they have introduced (not least, the need for immediate EPA rulemaking to adjust its multi-state federal Good Neighbor trading program in response to state-specific judicial stays of the Final Rule).[3]  But expedition of these petitions would mitigate that risk by ensuring, at

---

[2] Petitioners say EPA lacks "irreparable injury," Pet. Opp. at 8, but as the Respondent, EPA sought expedition not on the basis of irreparable injury but because the "public generally" and "persons not before the Court" have an unusual interest in expedited resolution.  *See* Mot.  In any event, Petitioners' assertion that EPA has no injury because the Final Rule was overdue, and because EPA has not sought expedition in other circuits, is misplaced.  The Final Rule was delayed in part by EPA's need to address Good Neighbor obligations for the 2008 ozone standards following this Court's remand in *Wisconsin*.  *See* 88 Fed. Reg. 9336, 9365 (Feb. 13, 2023).  And Petitioners cannot simultaneously claim that challenges in the various circuits are distinct for purposes of venue but related for purposes of scheduling.  Moreover, briefing in each circuit depends on case-specific factors, including the need for stay briefing, the circuit's case management practices, and the schedules of counsel.

[3] *See* https://www.epa.gov/csapr/notice-forthcoming-epa-action-address-judicial-stay-orders (notice of EPA's forthcoming action to stay federal plan Good

6

least, that the regional circuits called upon to address these issues might have the benefit of this Court's unparalleled Clean Air Act expertise and longstanding guidance in interpreting the Good Neighbor Provision when considering the proper venue for, and perhaps merits of, these challenges.

Petitioners dispute this premise, claiming that EPA's request will not prevent divergent opinions because the regional circuits may ultimately conclude that they can properly resolve the challenges before them, making a ruling in this Court contradictory. *See* Pet. Opp. 10-11. But this argument fails in several respects. First, as noted above, no court has concluded that these petitions are properly in the regional, rather than D.C., circuits, so the suggestion that the Ninth and Tenth Circuits will find themselves at odds with this Circuit is speculative.

Second, the United States' requests in this Court do not presuppose an outcome; this Court might ultimately agree with the regional circuits on venue or the merits, just as the regional circuits might ultimately agree with this Court. But no matter the outcome, Petitioners do not and cannot dispute that those circuits would recognize that the D.C. Circuit is uniquely positioned to weigh in on these matters: the Court is, unquestionably, exceptionally well-versed in both the Clean Air Act and the Good Neighbor Provision. *See, e.g.*, *Texas v. EPA*, No. 10-60961,

---

Neighbor obligations for states whose state plan disapprovals under the Final Rule have been stayed).

7

2011 WL 710598, at *4 (5th Cir. Feb. 24, 2011) (finding "clear congressional intent" that the Clean Air Act venue provision was intended to "take advantage of" the D.C. Circuit's "administrative law expertise" (citing legislative history)); 41 Fed. Reg. 56767, 56769 (Dec. 30, 1976) (recommendation of the Administrative Conference of the United States that "centraliz[ing] review of 'national' [state plan] issues in the D.C. Circuit" accords with the Court's "obvious expertise in administrative law matters" and the "very complex" Clean Air Act). And the Court has sole authority under the Clean Air Act to review nationally applicable actions (like EPA's Final Rule), *see* 42 U.S.C. § 7607(b)(1), making its view and voice in this matter distinct from other circuits.

Moreover, these challenges present matters of unique concern to this Court – the interpretation of its exclusive venue under Section 7607(b)(1) but also several merits issues where the parties' disputes concern aspects of this Court's prior precedents, including timing questions recently addressed in *Wisconsin v. EPA*, 938 F.3d 303 (D.C. Cir. 2019), and *Maryland v. EPA*, 958 F.3d 1185 (D.C. Cir. 2020), among others.[4] *See, e.g.*, 88 Fed. Reg. at 9361-62 (noting that under

---

[4] Notably, even in the context of EPA's subsequent federal plan, petitioners are attempting to secure review in the regional circuits rather than this Court, notwithstanding that exclusive D.C. Circuit review of EPA's federal Good Neighbor plans is well-established and has resulted in a significant body of precedent. *See Tulsa Cement LLC v. EPA*, No. 23-9551 (10th Cir.); *Nevada Cement Co. LLC v. EPA*, No. 23-1115 (9th Cir.); *Texas, et al. v. EPA*, No. 23-

8

*Wisconsin*, EPA was obligated to "structure its actions so as to ensure necessary reductions are achieved by the downwind attainment date").  The *possibility* that this Court may disagree with some of its sister circuits is not, therefore, adequate reason to delay consideration here.  Not only is such conflict not inevitable, but allowing the D.C. Circuit to weigh in on issues within its special expertise is more likely to harmonize outcomes across the circuits than if this Court stays silent.

Third, suggesting that any circuit splits on venue would best be resolved by denying expedition until after Supreme Court review, Pet. Opp. 11, has it backwards.  If the issues in this case will ultimately require Supreme Court resolution, it would be most protective of the public interest and the interests of downwind and other upwind states to ensure that those disputes are presented to the Supreme Court quickly and comprehensively, not after an extended delay to allow Ninth and Tenth Circuit review that only belatedly reaches the D.C. Circuit.

Indeed, Petitioners paradoxically suggest that expedition is unwarranted here because it would not be fast enough.  Pet. Opp. 10 (noting that other circuits are "poised" to rule "before this Court would be able to do so").  As a practical matter, it is not evident that Petitioners are correct.  The United States' motion on venue is still pending here, so this Court will have an opportunity to rule on venue, if it

---

60300 (5th Cir.); *see also, e.g.*, *Midwest Ozone Grp. v. EPA*, 61 F.4th 187 (D.C. Cir. 2023).

wishes, before the Tenth Circuit (which has deferred the issue to the merits panel) and possibly before the Ninth Circuit as well (where the issue is pending before a motions panel). And the timing of merits disposition in the various circuits is unknown. The United States has requested argument in this Court by the end of the year; it is entirely plausible that this Court's ruling could occur in time with or before other circuits.

In any event, the possibility that expedition in this Court may not entirely protect against divergent opinions is not a reason to abandon the best remaining pathway to effectuate Congressional intent concerning unified D.C. Circuit review, prevent inequities between states, ensure equal benefits for downwind communities affected by dirty air, and forestall needless circuit splits. This is especially true where many petitioners have sought stays of the Final Rule in their circuits of choice and some of those stays have been granted; prolonging litigation here only serves to extend the period in which downwind states and their citizens are without the protections promised by the Good Neighbor Provision under suitably protective state *or* federal Good Neighbor plans.

Together, these facts comprise strongly compelling and unusual public interests in this case, sufficient to justify this Court's expedited consideration. Contrary to Petitioners' suggestion, this is plainly not a run-of-the-mill venue dispute. Pet. Opp. 7. It is a dispute that has both practical and equitable

10

consequences for a program that has been critical to the attainment of previous ozone air quality standards, for the numerous upwind and downwind states who are not parties before the Court, and for millions of Americans living in areas with poor air quality. Petitioners should not be rewarded for their efforts to advance litigation more quickly in the regional circuits so as to preclude this Court from ensuring a uniform interpretation and application of the Good Neighbor Provision. And Respondents should not have to await Supreme Court review to try to restore some semblance of order to the chaos these and other petitioners have engendered in the application of the Good Neighbor Provision. Expedition in this Court may yet prevent the worst of these outcomes, so the United States' motion to expedite consideration should be granted.

## CONCLUSION

For the reasons described above and in Respondent's Motion, the United States respectfully requests that this Court order the parties to file briefing proposals no later than 7 days after the Court's order that will allow for argument by the end of 2023, consistent with Section X.D. of the Court's Handbook of Practice and Internal Procedures.[5]

---

[5] If additional petitions are transferred from the regional circuits after this Court issues a briefing schedule, the United States proposes that motions to govern be due within 7 days of consolidation addressing whether and how such petitions should be added to the existing schedule.

11

DATED: June 16, 2023                                Respectfully submitted,

                                                    TODD KIM
                                                    Assistant Attorney General

                                                    */s/ Chloe H. Kolman*
                                                    CHLOE H. KOLMAN
                                                    ALEXANDRA L. ST. ROMAIN
                                                    JIN HYUNG LEE
                                                    U.S. Department of Justice
                                                    Environmental Defense Section
                                                    P.O. Box 7611
                                                    Washington, D.C. 20044
                                                    (202) 514-9277
*Of Counsel:*                                       chloe.kolman@usdoj.gov

DANIEL P. SCHRAMM
ROSEMARY HAMBRIGHT KABAN
JEANHEE HONG
United States Environmental Protection Agency
1200 Pennsylvania Ave., NW
Washington, D.C. 20460

## CERTIFICATE OF COMPLIANCE

 I hereby certify that this motion complies with the requirements of Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman, a proportionally spaced font.

 I further certify pursuant to Fed. R. App. P. 32(f) and (g) that this motion contains 2,586 words, excluding exempted portions, according to the count of Microsoft Word, and that this motion complies with the type-volume limitation set forth in Fed. R. App. P. 27(d)(2)(A).

            */s/ Chloe H. Kolman*
            CHLOE H. KOLMAN

## CERTIFICATE OF SERVICE

 I hereby certify that on this 16th day of June, 2023, the foregoing Reply was electronically filed with the Clerk of the Court using the CM/ECF system, which will cause of copy of this Motion to be served upon all attorneys of record in this matter.

            */s/ Chloe H. Kolman*
            CHLOE H. KOLMAN